## BARBARA HOLT *vs*. CITY OF BOSTON.

Suffolk. April 13, 1987. — May 14, 1987.

Present: GRANT, CUTTER, & BROWN, JJ.

*Boston. Trustees of Health and Hospitals of the City of Boston. Workmen's Compensation Act*, Identity of employer.

The Trustees of Health and Hospitals of the City of Boston, although a corporation for certain limited purposes, was, as matter of law, a department of municipal government in its relationship to one of its employees who received workmen's compensation benefits after an injury; consequently, the city was not a "third party," subject to liability to the employee under the first two sentences of G. L. c. 152, § 15. [178-180]

CIVIL ACTION commenced in the Superior Court Department on November 19, 1980.

The case was heard by *Elbert Tuttle*, J., on a motion for summary judgment.

*Susan M. Weise*, Assistant Corporation Counsel, for the city of Boston.

*Edward M. Gainor* (*Diane M. Swierczynski* with him) for the plaintiff.

GRANT, J.   The plaintiff, while at her place of work at the Sickle Cell Center at Boston City Hospital (BCH), was injured by the collapse of a desk which was owned and had been maintained (if at all) by the city of Boston. She was paid workmen's compensation benefits, probably by the insurer of the city's Board of Health and Hospitals (board). At the time of the injury the plaintiff had been in the pay and employ of the corporation known as Trustees of Health and Hospitals of the City of Boston (Trustees). She accepted the workmen's compensation benefits and commenced the present action against the city in the Superior Court, seeking to recover damages for her personal injuries.[1] The theory of that action is that

---

[1] There was also a count against BCH which was voluntarily dismissed.

the city is a third party which the plaintiff can pursue under the provisions of the first two sentences of G. L. c. 152, § 15, as amended through St. 1971, c. 888, § 1. The city moved for summary judgment on the ground, in essence, that the city is not a third party because the Trustees, although a corporation for certain limited purposes, constitutes an integral part of one of the departments of the city government.[2] The motion was allowed, and the plaintiff appealed from the ensuing judgment.

We commence our discussion with a brief history of the establishment and governance of BCH. The hospital was established pursuant to St. 1858, c. 113. Section 2 of that Act provided: "The city council of said city shall have the power to make such ordinances, rules and regulations, as they may deem expedient, for the appointment of trustees, and all other necessary officers, agents and servants, for managing the said hospital." The trustees of the hospital were incorporated by St. 1880, c. 174, § 1, "by the name of the Trustees of the City Hospital of the city of Boston; and said trustees and their successors in office shall continue a body corporate for the purposes hereinafter set forth, with all the powers and privileges, and subject to all the duties, restrictions and liabilities in the general laws relating to such corporations." The "purposes" were set forth in §§ 2, 4 and 5 of the Act. Section 2 provided that the corporation could take and hold real and personal estate which might be given to it for the purposes of the hospital; monies received by and all securities belonging to the corporation were to be held and invested by the city treasurer subject to the direction of the city's finance committee.[3] Section 4 empowered the trustees to make rules and regulations relating to the operation of the hospital. Section 5 provided that the trustees "shall, subject to the direction of

---

[2] An alternative ground of the motion was that the plaintiff had failed to make proper presentment of her claim under G. L. c. 258, § 4. See *Johnson v. Trustees of Health & Hosps. of the City of Boston*, 23 Mass. App. Ct. 933 (1986). The relevant facts were not developed on the record, and the motion judge took no action on that aspect of the motion.

[3] Section 2 of the Act was amended by St. 1932, c. 215, and by St. 1955, c. 39, in respects which will appear later.

the city council, by ordinance or otherwise, have the general care and control of the City Hospital . . . and . . . of the expenditures of the money appropriated therefor."

We turn now to the salient features of St. 1965, c. 656 ("An Act creating in the city of Boston a new department of health and hospitals under the charge of a board [and] incorporating said board for certain purposes . . ."). Section 1 of the Act provides: "There shall be in the city of Boston . . . a department, known as the Department of Health and Hospitals . . . which shall be under the charge of a board, known as the Board of Health and Hospitals . . . ." The nine uncompensated members of the board are appointed by the mayor and are deemed to be special municipal employees for the purposes of G. L. c. 268A. The commissioner of health and hospitals is appointed by the mayor from a group of candidates nominated by the board (§ 2). His estimate of the appropriations required for the operation of the department must be approved by the board before they are submitted to the mayor (§§ 2 and 3[j]), and the board is authorized to "expend all appropriations made for the purposes of the department" (§ 3[j]). The board "shall have the general care and control of [BCH] and of all other public health facilities of the city" (§ 3[a]). With exceptions not here material, the board has the powers and duties which are imposed by the General Laws on boards of health of cities (§ 3[c]). The board determines the educational requirements of the physicians and other health care professionals employed by the department (§ 3[h]) and makes rules and regulations for the government of the department and its employees (§ 3[i]). It may adopt reasonable health regulations not inconsistent with those of the State Department of Public Health (§ 3[m]). The city's separate departments of health and hospitals were abolished (§ 9).

Sections 4, 5 and 6 of the 1965 Act are those on which the present controversy turns. Section 4 struck out the provisions of St. 1880, c. 174, § 1 (*supra,* at 176) and inserted in place thereof the following: "The Board of Health and Hospitals for the time being is hereby made a corporation by the name of Trustees of Health and Hospitals of the City of Boston; and

said board and its successor shall continue a body corporate for the purposes hereinafter set forth with all the powers and privileges, and subject to all the duties, restrictions and liabilities in the general laws relating to such corporations." Sections 5 and 6 effected further amendments of § 2 of the 1880 Act so that it now reads as set out in the margin.[4] All the other operative provisions of the 1880 Act were repealed by § 10 of the 1965 Act.

When all these provisions are sorted out, it appears that the only corporate functions of the Trustees are to hold the real estate on which BCH and the other city owned health facilities are located, to direct the investment and application by the collector-treasurer of the city of the endowments of BCH and the other health facilities, and to contract for, accept and expend grants and gifts from the public and private sectors. The reasons for clothing the board with a narrowly circumscribed corporate authority are obvious: the endowments and the proceeds of grants and gifts can be and are segregated from other funds of the city (see *Boston* v. *Dolan*, 298 Mass. 346, 351-352 [1937]) and managed by the persons in charge of BCH and the other city health facilities; and the income from the endowments, together with the grants and gifts, can be expended for their intended purposes without having to seek appropriations by the city council, such as are necessary under §§ 2 and 3 (*j*) of

---

[4] Statute 1880, c. 174, § 2, as amended by St. 1955, c. 39, and as further amended by St. 1965, c. 656, §§ 5 and 6, reads as follows: "Said corporation shall have authority to take and hold real and personal estate to an amount not exceeding ten million dollars, which may be given, granted, bequeathed or devised to it, and accepted by the Board of Health and Hospitals for any purpose connected with the public health or with any hospital owned and operated by the city of Boston. Money received by it shall be invested by the collector-treasurer of the city of Boston under the direction of said corporation; and all securities belonging to said corporation shall be placed in the custody of said collector-treasurer; provided, always, that both the principal and income thereof shall be appropriated according to the terms of the donation, devise or bequest, under the direction of said corporation.

"Said corporation shall, in addition, have authority for any purpose aforesaid to contract with, or to accept grants or gifts from, governments or governmental agencies, charitable foundations, private corporations or individuals, and to hold and expend the funds received under such contracts, grants or gifts."

the 1965 Act with respect to ordinary operating expenses.[5] The point is that Trustees of Health and Hospitals of the City of Boston is not an entity separate and apart from the city (compare *Kelley* v. *Rossi*, 395 Mass. 659, 665 n.6 [1985]; *Johnson* v. *Trustees of Health & Hosps. of the City of Boston*, 23 Mass. App. Ct. 933, 934-935 [1986] ); it is simply the corporate hat of the members of a public board charged with the management and operation of a department of the city government.

In the present case the plaintiff was employed at the Sickle Cell Center at BCH which was established and operated by the Trustees pursuant to a grant from the United States Department of Health and Human Services.[6] It seems clear that the grant was accepted by the Trustees, i.e., by the board of health and hospitals, acting under the second paragraph of § 2 of the 1880 Act, as inserted by § 6 of the 1965 Act (note 4, *supra*). The plaintiff was undoubtedly paid from that grant, but the only workmen's compensation policy in sight was one issued in the name of the board rather than in the name of the Trustees. We think the motion judge was correct in concluding as matter of law that the plaintiff was an employee of a department of

---

[5] It may also have been thought that incorporation would insure the deductibility of gifts for Federal income tax purposes under § 170 of the Internal Revenue Code of 1954, 26 U.S.C. § 170 (1964).

[6] These facts are set out in the motion judge's memorandum of decision. They find no support in the original papers (which we have examined), but they are accepted as correct by the parties in their briefs before us. They were undoubtedly agreed to below, very likely in the opposing memoranda which are referred to in the city's motion for summary judgment and in the plaintiff's opposition thereto. Such memoranda are routinely discarded by many clerk's offices in the course of assembling records on appeal unless counsel for the appellant has made a point of securing leave of court to have the memoranda docketed as parts of the record. Counsel and motion judges are reminded that Mass.R.Civ.P. 56 (c), 365 Mass. 824 (1974), is explicit that motions for summary judgment are to be heard and determined on the basis of the pleadings, affidavits, discovery documents and admissions "on file."

the city[7] and that the city is not a third party for the purposes of the first two sentences of G. L. c. 152, § 15.

*Judgment affirmed.*

---

[7] The plaintiff's reliance on the city's response to the plaintiff's seventh request for an admission of fact is misplaced; the question of the identity of the plaintiff's employer in this case is one of law, not one of fact.